jurisdiction over the person of the plaintiff, but did acquire jurisdiction over a thing and did not lose it. We find no error of record prejudicial to plaintiff in error and the judgment is affirmed at costs of plaintiff in error.

*A. H. Johnson* and *Henry Elliston,* for plaintiff in error.
*Gumble & Gumble,* for defendant in error.

---

## THE POWER TO MORTGAGE AND THE POWER TO SELL.

[Circuit Court of Lucas County.]

THE SECURITY TRUST CO. v. THE MERCHANTS & CLERKS' SAVINGS BANK CO. ET AL.

Decided, June 11, 1904.

*Securities Placed in Trust—For the Support and Education of Children—Right to Sell Includes the Right to Mortgage—Trustees and Trust Estates—Guardians.*

K placed certain stock in trust for the support and education of his children, with the proviso that if the income therefrom should be insufficient the trustee should have the power to convert a few shares from time to time into money for the purposes designated in the trust.

*Held:* That the power to sell included in this case the power to mortgage, and that it was incompetent, in a suit for recovery of the pledged stock from the bank making the loan, to introduce testimony tending to show that the contingency provided for under the trust had arisen, and that the bank acted prudently and in good faith and without collusion in making the loan, and that the trustee used his own good judgment honestly and fairly to meet the expenses of educating the children; and these facts having been established, a succeeding trustee can not recover the security from the bank except by tendering the amount due on the note.

HAYNES, J.; HULL, J., and PARKER, J., concur.

This case comes into this court by appeal, and has been heard upon the evidence. The case presents some questions of importance, although the amount in controversy is not very

large. It has been very fully and ably urged by counsel on either side, and a very large number of authorities cited. In the opinion which we shall deliver in the case we shall be very brief in disposing of the questions, not attempting to discuss all questions raised in the case, but briefly to announce our conclusions.

It appears that about the year 1892 George Dennison Keeler, a resident of this city, had been divorced from his wife. He had three children, two boys and one girl. The possession and custody of the girl had been delivered to the mother; the boys seemed to have fallen to the lot of the father. George D. Keeler was the son of Salmon H. Keeler, who had long resided in this county, and upon whose death a considerable estate had fallen to his children, George D. Keeler being entitled to and possessing his share. His financial circumstances, however, became such that he seems to have had some little doubt about his future, financially, and he on the 12th of May, 1892, executed a deed of trust to his brother, Arthur B. Keeler. George was possessed at that time of 150 shares of $100 each of stock of the Holcomb National Bank of the city of Toledo, and these he transferred to his brother in trust for the benefit of his three children, according to the terms of the instrument, which was quite lengthy and quite elaborate and full, 50 shares to be held for each child. It provided that the shares should be held until the youngest child became of age, and that the income of them should be applied for the education and support of the children, if necessary. So long as the daughter resided with the mother, the whole income went to the support of the two boys. It provides that the stock should not be sold, except under certain circumstances. The whole scope and purpose of the trust was to set aside this property to the children, and preserve it as far as possible for them until the youngest should become of age. Among other things it provided:

"Should my own financial circumstances be such as to prevent me from furnishing any maintenance or support or education to my children before they become twenty-one years of age, or the income or dividends from said stock fail to give to my sons the necessary support and education, then and in such

case said trustee is hereby authorized and directed to convert a few shares of the quantity belonging to each of said *cestui que trust* into money from time to time, to obtain the necessary means to furnish to each necessary support or education.''

It is claimed on behalf of the trustee that from that time forth the father failed to pay anything towards the support and maintenance of the children, and it would seem from the testimony here that his financial condition was gradually growing worse.

It appears by the evidence that at the time this trust deed was executed, and just prior thereto, the former guardian of the children resigned, and Arthur B. Keeler was appointed the guardian of the person of the three children, so that he stood in the dual capacity as guardian of the persons of the three children, and as a trustee, holding this property for their benefit; and it should be noted that by the statutes governing the guardianship of the person of children, that the guardian of the person is to see to the education of the children, their care, and that he is authorized by law to draw upon the person who is the guardian of the estate of the children for the necessary moneys for their education and support.   We may remark in passing that the guardian of the state would stand in relation to these parties substantially as would the guardian of the person, of course being affected simply by the limitations of the trust.

Matters had run along, and the guardian had been receiving dividends whenever they were made on this property, and attending to the education of the children, some of them being sent away to school, and some of them in other places.   In the course of time, it seems that George D. failing to provide money, and the children having to be supported and maintained, it became necessary for the trustee to borrow money, and he did obtain from the administrator of the estate of his father, Salmon Keeler, $600, which it is stated in the testimony was used for the support and maintenance of these children, and their education.   But the time came when that money was becoming due, and thereupon he went to the defendant savings bank, and desiring to borrow $600 of that bank, negotiations were opened for the purpose of seeing whether the bank would loan him the

money. He proposed to secure a loan of $600 by the transfer of $1,000—that is, ten shares—of the capital stock of the Holcomb bank which he held in trust, and the bank officers made inquiry with respect to the matter, and investigated, it seemed, quite fully into the circumstances and the needs of the trustee with regard to the moneys that he required. The administrator of the estate of Salmon Keeler appeared before them to make a statement with regard to the moneys that had been loaned, and a statement was made with regard to the use that had been made of that money, to-wit, for the support and maintenance and education of the children. The bank, desiring to be perfectly sure about the position they were taking, requested that he apply to the probate judge who had appointed him guardian, and get his consent or an order that he might make this loan. He went to the probate court, and the probate court appointing him, granted him permission to pledge this stock. While perhaps it may be doubted whether without that order it would not have been legal and binding, yet the circumstance goes to show the care which was exercised by the bank in the negotiation of this loan, in endeavoring to ascertain their rights in taking the stock for security. Thereupon the loan was effected and the stock was pledged, and such of the money as was needed to take up the note to the administrator of the estate of Salmon H. Keeler was paid over to him. The balance was paid to the trustee for his use, and was used for the children.

Subsequently Arthur Keeler moved to California, and certain parties who were interested in the children took steps to have him removed as trustee of this fund, and he was by order of the court of common pleas removed from the position, and the Security Trust Co. was appointed in his place. Thereupon the Security Trust Co. demanded of the Merchants' & Clerks' Savings Bank that they should turn over to it these ten shares of stock which they held. The note which they were pledged to secure had not been paid. A little interest had been paid, but the face of the note and some arrears of interest were still due. The Security Co. made no tender of the amount due on the note, nor did it make any offer to pay it. It assumed that the bank had no right whatever to this stock; that its title was wholly

void, and that the Security Trust Co. was entitled to the imme-diate possession of the property.

Upon this proposition have been cited the decisions that I have referred to. It is claimed upon the one hand that under this clause in the deed of trust which authorized the selling of the property under certain circumstances, the trustee could only sell and receive the amount of money for which he could sell the property. On the other hand, it is claimed by the bank that the right to sell included also, under proper circumstances, the right to mortgage.

Testimony was offered tending to prove that at the time the loan was made the stock of the bank, owing to the fact that it had passed dividends for two years, was below par, or at least not above par, and that it was rather under a cloud as a marketable article; that it was better for the bank and considered better for the trust and trustee that the stock should be kept in shape where it would have the benefit of any rise in the market price thereof. The testimony shows that there has been an increase in the earnings of the bank since that time, and an increase in the value of the stock and its salability. It is claimed by the bank that these matters were taken into consideration at the time the money was borrowed.

It is claimed that even if there was a right to mortgage the property, the officers of the bank were bound to know that circumstances had arisen that would authorize the trustee to pledge it; they were bound to ascertain and know, if we understand the argument, that George D. Keeler was neither furnishing anything for the support and education of his children, nor had he the means to do it. It will be observed, that contingency arising, the trustee would have the right to sell this property, or so much of it as would be necessary, from time to time, from each one's share, to support that particular child. If the trustee could make no sale of the property except that the person who purchased it must ascertain and know, and be able to maintain in court at any and all times that the contingencies had arisen under which a sale could be made, he would not be very likely to make a sale of the property. No person who wanted to buy the property would take upon himself an offer of that

kind, and be able to come into court and show that the trustee had the right to sell. So the mortgagee, if there was a right to mortgage, would stand in the same position.

I have said that a large array of authorities have been cited upon the propositions respectively urged by the parties to this suit. It is sufficient to say, and all I deem necessary to say at this time, that there are a large number of authorities, very able courts, that hold that the power to sell does not include the power to mortgage, and that the powers that are stated in the deed of trust with which the trustee is qualified must be strictly followed and pursued. There are a large number of authorities of very able courts who hold that the power to sell does include the power to mortgage, some of the ablest courts in the United States saying that it does, beyond all question. We are inclined to hold, and we do hold, so far as this case is concerned, that this trustee had the power, the contingency arising, to borrow money for the support and maintenance of these children, and to pledge this stock for such a loan. It is proper to offer testimony here showing that the bank acted prudently and in good faith in regard to the matter, and that under the conviction that the trustee was acting honestly in the purpose in which he was acting, in borrowing the money, and that there was no collusion on its part with him in loaning it for any other purpose than that for which it was stated. We think, so far as we are concerned, that this is the justice and equity of a matter of this kind, and we are inclined to follow those decisions that hold the law to be as stated, in that respect. In those cases it has been held by the courts that testimony of the kind that I speak of is admissible. The testimony in this case we think shows that this money was borrowed for this purpose, was used for this purpose. The fact that it was used to pay a debt that existed for money that had been already borrowed and used for this purpose is matter that would make no difference in the case, in our judgment.

It is claimed that there were some moneys in the bank that should have been appropriated to this purpose; but this trust was a continuing trust. If that money had been used for this purpose, the trustee would have had to raise money for the

purpose of paying expenses.   It was simply a matter in which the trustee was using his own good judgment honestly and fairly to meet the expenses of the education of the children—expenses already incurred and expenses to. be incurred.   It was claimed that George D. Keeler had some property still in his possession, but here was the trustee chargeable with the care and support and maintenance of the children, and the father was furnishing him no money, and he could not sit down and wait until some interest was worked out of the father's estate, if George had anything left.   It appears that his creditors were all after him, and were attaching properties that were supposed to belong to him, and that he was in financial difficulties, and going through his property rapidly.   The testimony tended to show tee could act, might act, and should act, for the purpose of that he was out of money, had no means, was practically poor. The fact is, under the circumstances of the case, that the trus- raising money for the support and maintenance of these chil- dren; that the contingency had arisen which had been con- templated in the deed of trust itself for furnishing this money for the support of these children.

After stating our conclusion in regard to the matter, we hold that the action of the Security Trust Co. can not be maintained, and the Trust Co. as trustee of this property or any 'of it has no right to take this security from these parties, save and except by tendering the amount that is due upon the note.   We think it would be unjust and inequitable that this trustee should be permitted to take from this bank these securities without ten- dering to it the money that is due upon the note.

The action, therefore, will be dismissed.

*Johnson Thurston,* for plaintiff.

*O. B. Snider,* for defendant.